UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-36 (NEB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER OF DETENTION |
| | ) |
| DAYTON CHARLES SAUKE, | ) |
| | ) |
| Defendant. | ) |

This matter came before the Court on March 12, 2024, for a preliminary and detention hearing on a petition alleging violations of Defendant Dayton Charles Sauke's, mandatory and special conditions of supervised release. (ECF 119, 128)  Mr. Sauke appeared in custody and was represented by his appointed counsel, Andrew H. Mohring, Esq.  The United States was represented by Assistant United States Attorney Benjamin Bejar.  United States Probation Officer Brian James was also present.

The United States moved for detention pending the final revocation hearing at Mr. Sauke's initial appearance, where Mr. Sauke was advised of his constitutional rights, the nature of the alleged violations, and permitted to consult with his appointed counsel. (ECF 121)  *See* Fed. R. Crim. P. 32.1(a)(3) & (6).

After consideration of the Petition on Supervised Release, the Supervised Release Violation Report, the alleged violations, the testimony and evidence adduced, the arguments of counsel, and the record before the Court, the Court concludes that probable cause exists to believe that Mr. Sauke violated terms and conditions of his supervised-release and that Mr. Sauke has failed to show by clear and convincing evidence that he will

not pose a danger to any other person or the community should he be released pending further proceedings. Fed. R. Crim. P. 32.1(a)(6), (b)(1)(A); 18 U.S.C. § 3143(a)(1). Accordingly, Mr. Sauke shall be detained pending a final revocation hearing in the District Court.

## FINDINGS OF FACT

1. In August 2021, Mr. Sauke pleaded guilty to possessing an unregistered firearm (a short-barreled shotgun), in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. In January 2022, the Court sentenced Mr. Sauke to 31-months' imprisonment followed by three years' supervised release with mandatory and special conditions. On June 14, 2023, while Mr. Sauke was in pre-release confinement, the Court imposed additional supervised-release conditions, including internet restrictions and monitoring and extremist-material restrictions. (ECF 98, 119) Mr. Sauke consented to these modifications, waiving representation and a hearing on them. (ECF 96) Mr. Sauke began his supervised-release term on June 22, 2023, and the terms and conditions of supervised release were explained to him. (ECF 119)

2. The supervised-release violation petition alleges that Mr. Sauke attempted to possess with intent to distribute MDMA, a schedule I controlled substance, attempted to gain access to a firearm, lied to his supervising probation officer regarding his restricted use of the internet, had unauthorized communications with a known felon regarding illicit activities, and admitted using alcohol. (ECF 119)

3. At the present hearing, the United States offered the testimony of Mr. Sauke's supervising probation officer, Mr. Brian James. The United States also offered, and the

Court admitted without objection, seven exhibits consisting of screenshots from a Tor browser[1] taken from Mr. Sauke's cellphone, photos of a package allegedly containing 259 grams of MDMA mailed from the United Kingdom to Mr. Sauke at his present address, select instant messages and texts sent and received from Mr. Sauke's cellphone, and other photos and images taken from Mr. Sauke's cellphone.

4. Mr. James testified about his supervision of Mr. Sauke, Mr. Sauke's history, and the bases underlying the alleged supervised-release violations. Specifically, in February 2024, the Department of Homeland Security informed Mr. James that it had intercepted a package found to contain 259 grams of field-tested MDMA that was sent from the United Kingdom and addressed to Mr. Sauke at his current address in Saint Paul, where he was residing at a sober house. (GE 2) As part of his supervision, Mr. James requested and obtained Mr. Sauke's cellphone from him for review and inspection, in accord with Mr. Sauke's supervised-release conditions. With the Court's permission, Mr. James submitted the cellphone to the FBI for further analysis, and the FBI provided Mr. James with a Cellebrite report, listing photos, screenshots, text messages, and websites contained on and/or accessed through the cellphone. (GE 3) Some of the screenshots were of the Tor browser reviewing various narcotics for sale on a United Kingdom-based website (GE 1) and Mr. James testified that some of the screenshots showed the user log-in user name matched a known user name that was also seen elsewhere in Mr. Sauke's

---

[1] Officer James testified that a Tor browser is used to access the so-called "dark web," primarily for nefarious online activities, such as ordering narcotics from overseas, and accepts online payment primarily by cryptocurrency.

3

phone. In some of the text messages, Mr. Sauke discussed sales of "Molly," a street-name for MDMA, pricing, profit, as well as his overseas order for a package that had not yet been delivered, the timing of which coincided with the intercepted package of MDMA. (GE 3)  Some of the corresponding text messages were between Mr. Sauke and a person known to Mr. James to have a prior felony record discussing drug sales and prices. (GE 3)  Mr. James also testified to Mr. Sauke's history of MDMA abuse, and the government offered a photo of a tattoo on Mr. Sauke's chest depicting the chemical composition of MDMA. (GE 4)  Although Mr. Sauke initially denied accessing a Tor browser to order drugs, on March 8, 2024, Mr. Sauke admitted to Mr. James that between late December 2023 and mid-January 2024, he used the Tor browser on his cellphone to attempt to purchase drugs from the United Kingdom.

5. Additionally, the instant messages and texts between Mr. Sauke and his sister and significant other show that Mr. Sauke made at least two requests that his shotgun be returned to him, even offering to pay for it, and his cellphone showed that he had at least researched a website and downloaded a CNC machine user's guide to make privately made firearms and a layaway agreement for purchasing the machine, in February and August, 2023. (GE 3, 5)  Mr. James also testified regarding Mr. Sauke's history of making and illicitly selling such firearms in connection with his 2022 conviction and sentencing. A text message indicates that Mr. Sauke asked his sister for a laptop, impact drill, Dremel, and his shotgun on December 14, 2023 and another text message to his sister dated February 9, 2024 with a timestamp of 12:21:54 AM indicates he received the laptop, impact drill, and Dremel. (GE 3)  A text message from Mr. Sauke to his sister dated February 9,

2024 with a timestamp of 3:30:38 AM states "Well you just gave me all the power tools I need to build guns again." (GE 3)  In one text exchange regarding his shotgun dated February 5, 2024, Mr. Sauke referred to possibly blowing someone's head off. (GE 3)  Mr. Sauke's cellphone also contained a photo of a semiautomatic pistol that appeared to be tagged for sale. (GE 6)

6. Lastly, although not alleged as a violation, the government offered two images found on Mr. Sauke's cellphone of an apparent nazi youth saluting with an apparent swastika flag, and a "Pepe the frog" image holding an assault rifle, which has become commonly associated with white supremacist groups and movements. (GE 7)  Mr. James also testified that Mr. Sauke's cellphone had a downloaded picture of an individual who had been convicted of a felony holding a gun and wearing a shirt that had some insignia that identified the individual as a Boogaloo Boy.  He further testified that other than these three photos, he had not found any extremist content.

7. While on supervised release, Mr. Sauke did obtain employment as an electrician and successfully completed in-patient and intensive outpatient phases of a residential dual-diagnosis treatment program.  He had resided in sober housing from October 2023 until his arrest in March 2024.  The violations and the majority of the evidence supporting them occurred during a period of unemployment, from late December 2023 to mid-February 2024.

8. At the close of the evidence, Mr. Sauke did not contest probable cause, but instead argued that additional conditions of release could assure the safety of the community pending the final revocation hearing.  While the Court considered additional

conditions, the Court specifically finds that no additional condition or combination of conditions will reasonably ensure Mr. Sauke's compliance with the terms and conditions of his supervised release pending further proceedings given that he has allegedly failed to abide by the numerous terms and conditions already in place.

## CONCLUSIONS OF LAW

1. Probable cause exists to believe that the alleged supervised-release violations occurred and that Mr. Sauke violated his supervised-release conditions as alleged in the Petition, and Mr. Sauke is bound over to the district court for further proceedings.

2. Mr. Sauke has failed to show by clear and convincing evidence that he does not pose a danger to any other person or the community should he be released pending the final revocation hearing. Fed. R. Crim. P. 32.1(a)(6); 18 U.S.C. § 3143(a)(1).

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Mr. Sauke shall be detained pending the outcome of a final revocation hearing in the United States District Court, currently scheduled for **March 26, 2024, at 11:00 a.m., before District Judge Nancy E. Brasel, in Courtroom 13W, in Minneapolis**;

2. Mr. Sauke is committed to the custody of the Attorney General;

3. Mr. Sauke shall be afforded reasonable opportunity to consult privately with counsel; and

4. Upon Order of the Court or request by the United States Attorney, the person in charge of the corrections facility in which Mr. Sauke is confined shall deliver Mr. Sauke to the United States Marshal for the purpose of appearance in connection with further court proceedings.

Dated: March 19, 2024.

                                             *s/Elizabeth Cowan Wright*
                                             ELIZABETH COWAN WRIGHT
                                             UNITED STATES MAGISTRATE JUDGE